HOUSING AUTHORITY OF CITY OF BLYTHEVILLE *v.*
CITY OF BLYTHEVILLE.

5-1461                                                310 S. W. 2d 222

Opinion delivered February 24, 1958.

*Taylor & Sudbury,* for appellant.

*Marcus Evrard* and *James M. Gardner,* for appellee.

J. SEABORN HOLT, Associate Justice.   In 1914 the City of Blytheville created Sewer District No. 1 and issued bonds for funds to pay for this improvement. These bonds were duly paid together with all indebtedness of the District by 1937. In 1955, the City of Blytheville, by proper ordinance authorized the construction of a central sewer system, by enlarging, extending and improving District No. 1.   By this ordinance and a later amendment, rates for sewer service were set at $1.80 per month.   This sewer system was constructed, bonds were sold in the amount of $850,000 to cover costs and services commenced.

On March 12, 1940, appellant, Housing Authority (hereafter referred to as "Housing") was created by the City of Blytheville under the provisions of Secs. 19-3001 — 19-3074 Ark. Stats. 1947.   In 1941 the City and Housing entered into a cooperation agreement under the terms of which Housing was to erect a low rent housing project in the City.   Under this agreement appellee, City, agreed that it would "not levy, impose or charge any taxes, special assessments, service fees, charges or tolls against the project or against the Authority or with respect to the project and that it will furnish without cost to the Authority and the tenants of each project the usual municipal services and facilities which are or may be furnished without cost or charge to other dwellings and inhabitants in the City, including but not limited to fire, police and health protection and service, street maintenance and repair, garbage,

trash and ash collection and disposal, street lighting on public streets within any project and the boundaries thereof and sewer services.'' Housing erected 80 units under this agreement.

Later, in March 1950, a second agreement was entered into, by the terms of which the City agreed ''without cost or charge to the local Authority or the tenants of such project (other than Payment in Lieu of Taxes) to furnish or cause to be furnished to the local Authority and the tenants of such project (I) the public services and facilities which are at the date hereof being furnished without cost or charge to other dwellings and inhabitants in the City, including but not limited to: educational . . . and services; maintenance and repair of . . . sewer and water systems; adequate sewer service for such project . . . and (II) also such additional public services and facilities as may from time to time hereafter be furnished without cost or charge to other dwellings and inhabitants in the City.'' Thereafter Housing erected and completed 128 additional dwelling units. Housing was among those in the City which derived benefit and used such sewer services, but it refused to pay for such services ($1.80 per month) whereupon appellee sued to recover from Housing a judgment (in a sum certain) for the amount due. From a judgment in favor of appellee (city) is this appeal.

The facts are not in dispute, the reasonableness of the rate is not an issue, nor the fact of using such services. For reversal appellant relies on these two points: ''1. Appellant contends that the Decree of the lower court is contrary to the provisions of Act 298 of the General Assembly of the State of Arkansas for the year 1937 which exempts Housing Authority from the sewer charge. 2. Appellant contends that the Decree of the lower court is contrary to the written cooperation agreements of the Housing Authority and the City of Blytheville exempting Housing Authority from said sewer charge.''

The parties agree that the sole question presented is whether the Housing Authority is liable for the monthly charge of $1.80 for each of its dwelling units occupied. Sec. 19-3027 Ark. Stats. 1947 provides: "Tax exemption — Payments in lieu of taxes.—The property of an authority is declared to be public property used for essential and exclusively public and governmental purposes, and not for profit, and such property and an authority shall be exempt from all taxes and special assessments of the State of any State Public Body thereof; provided, however, that in lieu of such taxes or special assessments, an authority may agree to make payments to a State Public Body for improvements, services and facilities furnished by such State Public Body for the benefit of a housing project, . . ." "State Public Body" includes a city, municipal corporation, district or other subdivision of the State.

The determination of the issue here presented must turn upon the proper construction of the above sections of the two cooperation contracts between the City and Housing. The trial court found,—and we think correctly,—that the charge of $1.80 fixed by the Sewer Ordinance of 1954 did not constitute a tax or an assessment within the meaning of the pertinent Section 19-3027 *above*, but was, in fact, a proper sewer service charge. First, we point out that since these two cooperation agreements were prepared by the Housing Authority it is a well settled rule that any doubtful language used in these contracts should be construed against the party who prepared them.

In analyzing and interpreting the meaning of the two provisions, above, the first, in the 1941 cooperation agreement, and the other in the 1950 agreement, the trial court in its findings used this language: ". . . the first contract . . . combines an agreement upon the part of the city to the effect that it will not undertake to impose or levy or charge any taxes or special assessments, with the further agreement that it will fur-

nish to the Authority without cost or charge the usual municipal services and facilities, 'which are or may be furnished without cost or charge to other dwellings and inhabitants in the city, including but not limited to: fire, police and health protection and services — garbage —, and sewer services.' . . . (The first cooperation agreement) . . . undertakes to cover in one sentence, an agreement to the effect that the city will not, for a specified time, levy, impose or charge any taxes, special assessments, service fees, charges or tolls against the property or against the Authority or with respect to the project. And then without punctuation and continued in the same sentence, undertakes to obligate the city to furnish, without cost or charge to the Authority or the tenants thereof, the usual municipal services and facilities which are or may be furnished without cost or charge to the other dwellings and inhabitants in the city and in this connection, includes garbage and sewer services.

"It is plain, therefore, that the author of the contract intended to include . . . the legal exemptions for taxes and assessments and that the first part of the sentence has reference only to this statutory exemption and that the second part of the sentence undertakes to provide an agreement to furnish certain services free of charge . . . It does not appear to the court that the language used is susceptible to the interpretation or construction that the municipality intended to furnish free of charge at all times specified in the contract such services and facilities as were being furnished without cost or charge to other dwellings and inhabitants in the city. Any other construction would render the use of the words, 'Or may be furnished without cost or charge' superfluous and meaningless. The proper construction to be placed upon the language used is that the municipality agreed to furnish such usual services and facilities that were then being furnished without cost or charge to other dwellings and inhabitants in the city or that might be furnished free of charge in the future. In other words, it cannot be said that the

parties intended to discriminate and furnish such essential services in the future free of charge if it should become necessary to charge the other dwellings and inhabitants of the city for similar services and facilities.

"The provisions of the contract of 1950 and the language used therein makes it clearer that such was the intention in the first contract as well as in the second . . . (These provisions) obligate the municipality to furnish without cost or charge, (1) The special services and facilities which were at that time being furnished without cost or charge to the other dwellings and inhabitants of the city, including garbage, trash and ash collection and disposal and adequate sewer services, and (2) Such additional public services and facilities as may, from time to time hereafter, be furnished without cost or charge to other dwellings and inhabitants in the city.

"The court is likewise of the opinion that the language here used means simply that it is the intention of the parties to place the Housing Units and the occupants thereof in the same position relative to public services and facilities as the remaining inhabitants of the city and to furnish public services and facilities free only so long as such services and facilities are furnished free to the other inhabitants of the city."

Based on the above findings, a decree was entered against Housing in the amount of $1,634.40. We affirm that decree.

McFADDIN, J., dissents.