[No. 60984-5. En Banc. May 12, 1994.]

KING COUNTY FIRE PROTECTION DISTRICT No. 16, ET AL, *Appellants,* v. THE HOUSING AUTHORITY OF KING COUNTY, *Respondent.*

820

*Kinnon W. Williams, Erin Pitts,* and *Williams & Williams, P.S.C.,* for appellants.

*Montgomery, Purdue, Blankinship & Austin,* by *John D. Blankinship,* for respondent.

ANDERSEN, C.J. —

## FACTS OF THE CASE

This is an action to determine whether a public housing authority must contract with fire protection districts for fire protection and emergency medical services or pay "benefit charges" levied by the districts.

King County Housing Authority (Housing Authority) operates a number of low-income housing projects within King County. The Housing Authority was established in 1939, pursuant to federal and state law.[1]

The purpose of both the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, and its state counterpart, the Housing Authorities Law, RCW 35.82, is to establish public housing authorities that make safe and sanitary housing available to low income persons.[2] Funding from the federal government is available to local housing authorities only if certain conditions are met.[3]

One of those conditions requires that federal funds not be contributed to a local housing authority unless the housing project to be funded "is exempt from all real and personal property taxes levied or imposed by the State, city, county, or other political subdivision".[4]

State law thus exempts housing authorities "from all taxes and special assessments of the city, the county, the state or any political subdivision" of the state.[5] Both federal and state laws authorize housing authorities to make "payments in lieu of taxes".[6]

---

[1] 42 U.S.C. § 1437 *et seq.*; RCW 35.82.

[2] *See* 42 U.S.C. § 1437; RCW 35.82.010; *Housing Auth. v. Seattle*, 56 Wn.2d 10, 13, 351 P.2d 117 (1960).

[3] 42 U.S.C. §§ 1437c-1437d.

[4] 42 U.S.C. § 1437d(d).

[5] RCW 35.82.210.

[6] Federal law permits such payments in an amount that is equal to 10 percent of the shelter rents charged by the housing authority project, or any lesser amount authorized by state law, agreed to by the local governing body, or justified by the failure of a local public body to perform any contractual obligation. 42 U.S.C.

Furthermore, the Housing Cooperation Law, RCW 35.83, authorizes public agencies in this state to cooperate with, provide services to, and contract with housing authorities.

Pursuant to these federal and state statutes, Respondent Housing Authority has entered into a number of agreements with King County. These agreements generally provide that in lieu of taxes and special assessments and in payment for the public services and facilities furnished to the project, the Housing Authority will make an annual payment to King County. That payment is agreed to be an amount equal to either 10 percent of the shelter rents charged by the Housing Authority with respect to the particular housing project involved, or any lesser amount that is permitted to be paid by state law.[7] Under the agreements, King County (which is not a party to this action) agreed to proportion the payments among the various taxing bodies in the county.

Fire protection services and emergency medical services provided to the Housing Authority projects involved here are not furnished by King County. Instead, they are provided by Appellants, King County Fire Protection Districts 16, 36 and 40 (Fire Protection Districts). The Fire Protection Districts involved here are political subdivisions of the State,[8] and are independent of any county government.

The Fire Protection Districts are primarily funded by property taxes levied pursuant to RCW 52.16, by direct

---

§ 1437d(d). The state statute provides that a housing authority may agree to make such payments to the city or the county or any such political subdivision for improvements, services and facilities furnished by such city, county or political subdivision for the benefit of a housing project. RCW 35.82.210.

[7]The record shows that the Housing Authority has entered into agreements with King County for approximately one-half of the housing projects lying within the Fire Protection Districts' boundaries. Despite the terms of those agreements, however, the Housing Authority, apparently unilaterally, has reduced by one-half the amount of payments in lieu of taxes that are required of it under the King County agreements. Furthermore it is the Housing Authority's policy to make *no* payments in lieu of taxes on locally owned developments which do not receive federal funds.

[8]RCW 52.12.011.

service charges assessed pursuant to RCW 52.12, and by benefit charges made pursuant to RCW 52.18. Additionally, the fire protection district law provides that an agency or municipal corporation which owns property within a fire protection district "shall contract with such district for fire protection services necessary for the protection and safety of personnel and property". RCW 52.30.020.

The Housing Authority has refused to contract with the Fire Protection Districts pursuant to this statute claiming that (1) the contract statute, RCW 52.30.020, does not apply to housing authorities or (2) the cooperation agreements between the Housing Authority and King County satisfy any obligation the Housing Authority has to contract with the Fire Protection Districts. The Housing Authority claims the Fire Protection Districts are compensated for services rendered to Housing Authority property by distributions made by King County.[9]

The Housing Authority also has refused to pay any benefit charges to the Fire Protection Districts, claiming these charges are taxes or assessments from which the Housing Authority is exempt.

Benefit charges may not be assessed against public entities which have entered into fire protection contracts pursuant to RCW 52.30.020. The Fire Protection Districts involved here began assessing the benefit charges in 1990 and 1991. The use of benefit charges enables fire protection districts to reduce the amount of their regular property tax levies. Benefit charges are to be based on what a fire protection district determines is an amount that is reasonably proportional to the measurable benefits resulting from the services afforded by the district to the property.[10] The charge is not based on the value of real property, but is

---

[9]The record in this case does not clearly indicate whether the fire districts have received any such funds from King County and, if so, the amount of the funds received.

[10]RCW 52.18.010.

instead linked to other factors such as insurance savings, water source and distance from fire service facilities.

In December 1991, the Fire Protection Districts filed an action in the Superior Court for King County seeking an order requiring the Housing Authority to enter into contracts for fire protection services, pursuant to RCW 52.30.020, and for a judgment for past benefit charges due to the Fire Protection Districts. All parties moved for summary judgment. The trial court granted the Housing Authority's motion and dismissed the Fire Protection Districts' complaint. The Fire Protection Districts appealed and we accepted certification of the case from the Court of Appeals.

Two issues are raised by this appeal.

ISSUES

ISSUE ONE. Are housing authorities required by RCW 52.30.020 to contract with fire protection districts for fire protection and medical emergency services?

ISSUE TWO. Is the King County Housing Authority liable for payment of benefit charges, imposed pursuant to RCW 52.18, for those years in which it did not contract with the Fire Protection Districts for fire protection services?

DECISION

Preliminary Matters

■■ In reviewing a summary judgment of dismissal, an appellate court engages in the same inquiry as the trial court.[11] In cases such as this one, where the issue is the proper construction of a statute, the trial court's conclusion is reviewed de novo.[12]

Preliminarily, the Fire Protection Districts argue that the trial court erred in denying their motion to strike declarations submitted by the Housing Authority which expressed the legal opinions of the declarants as to whether "benefit charges" levied by the Fire Protection Districts are taxes.

---

[11]*Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

[12]*Our Lady of Lourdes Hosp. v. Franklin Cy.*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993).

■ A court may not consider inadmissible evidence when ruling on a motion for summary judgment.[13] The legal opinions of witnesses are inadmissible.[14]

The trial court here recognized the statements as being legal opinions and properly disregarded those opinions. The Fire Protection Districts claim, however, that the trial court erred in failing to then strike the declarations in their entirety.

■■ A ruling on a motion to strike is discretionary with the trial court.[15] A trial court does not abuse its discretion in admitting a declaration for a limited purpose where, as here, the trial court disregards inadmissible legal conclusions.[16]

ISSUE ONE.

CONCLUSION. Pursuant to RCW 52.30.020, housing authorities are required to contract with fire protection districts for fire protection and emergency medical services.

■ ■ The resolution of this first issue requires us to interpret a number of seemingly unrelated statutes. In construing these statutes we follow general principles of statutory construction which require that statutes be construed in the manner that best fulfills the legislative purpose and intent.[17] Where possible, statutes should be read together to determine legislative purpose so as to achieve a harmonious

---

[13]*Dunlap v. Wayne*, 105 Wn.2d 529, 535, 716 P.2d 842 (1986).

[14]*See Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 344, 858 P.2d 1054 (1993) (legal opinions on the ultimate *legal* issue before the court are not properly considered under the guise of expert testimony and it was error for the court to consider legal opinions expressed in affidavits); *Parkin v. Colocousis*, 53 Wn. App. 649, 653, 769 P.2d 326 (1989) (neither the trial court nor an appellate court can consider conclusions of law contained in an affidavit).

[15]*Orion Corp. v. State*, 109 Wn.2d 621, 638, 747 P.2d 1062 (1987), *cert. denied*, 486 U.S. 1022 (1988).

[16]*Orion*, 109 Wn.2d at 638. *See also State v. Buntain*, 11 Wn. App. 101, 106, 521 P.2d 752, *review denied*, 84 Wn.2d 1007 (1974).

[17]*In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993).

total statutory scheme which maintains the integrity of the respective statutes.[18]

The first statute we consider is RCW 52.30.020; it provides:

Wherever a fire protection district has been organized which includes within its area or is adjacent to, buildings and equipment, except those leased to a nontax exempt person or organization, owned by the legislative or administrative authority of a state agency or institution or a municipal corporation, *the agency or institution or municipal corporation involved shall contract with such district for fire protection services necessary for the protection and safety of personnel and property* pursuant to the provisions of chapter 39.34 RCW, as now or hereafter amended: PROVIDED, That nothing in this section shall be construed to require that any state agency, institution, or municipal corporation contract for services which are performed by the staff and equipment of such state agency, institution, or municipal corporation: PROVIDED FURTHER, That nothing in this section shall apply to state agencies or institutions or municipal corporations which are receiving fire protection services by contract from another municipality, city, town or other entities . . .

(Italics ours.)

The Fire Protection Districts claim this statute places a duty on the Housing Authority, as a state agency or institution or as a municipal corporation,[19] to contract with the Fire Protection Districts for fire protection services. In *Ellensburg v. State*, 118 Wn.2d 709, 826 P.2d 1081 (1992), we held that substantially identical language in former RCW 35.21.775 placed a *duty* on the state to contract for fire protection services provided to Central Washington University by the City of Ellensburg.[20] We there held that the language "the state or agency or institution shall contract with the city or town for fire protection services necessary for the protection and safety of personnel and property" was mandatory.[21]

---

[18]*Ellensburg v. State*, 118 Wn.2d 709, 713, 826 P.2d 1081 (1992).

[19]The Housing Authority admits in its Answer that it is a municipal corporation. See Clerk's Papers, at 3 (complaint, at para. 1.2); Clerk's Papers, at 162 (Answer, at para. 1.2).

[20]*Ellensburg*, 118 Wn.2d at 712-13.

[21]*Ellensburg*, 118 Wn.2d at 712. While the *Ellensburg* decision was pending in this court, the Legislature amended RCW 35.21. Laws of 1992, ch. 117, p. 460.

■ Based on the plain language of the statute, and on our holding in *Ellensburg*, it would appear that the Housing Authority has a statutory duty to contract with the Fire Protection Districts for fire protection and emergency medical services. The Housing Authority argues, however, that RCW 52.30.020 does not apply to housing authorities. It relies on a part of the State Housing Authorities Law, RCW 35.82.070(10), which states in part:

> No provisions of law with respect to the acquisition, operation or disposition of property by other public bodies shall be applicable to [a housing] authority unless the legislature shall specifically so state.

The Housing Authority's position is that the contract statute, RCW 52.30.020, is a law that concerns the "operation" of property. Because that statute does not *specifically* state that it applies to housing authorities, it is, in the Housing Authority's view, inapplicable to housing authorities.

■ RCW 35.82, the State Housing Authorities Law, does not define "operation" of property. Where the Legislature fails to specifically define a statutory term, the court will read the word according to its plain and ordinary meaning.[22] "Operation" means the whole process of planning for and operating a business or other organized unit.[23] In other words it means "the day-to-day carrying on of business".[24]

■ We conclude that it is unlikely that the Legislature intended the term "operation" to include entering into contractual relationships with other public or private agencies for essential services rendered to Housing Authority properties. If we were to interpret the word "operation" in the statute as broadly as the Housing Authority urges, then it would seem likely that most actions of housing authorities would be exempt from Washington laws. For example, neither the State Building Code Act, RCW 19.27, nor the State Law Against Discrimination, RCW 49.60, specifically

---

[22]*First Covenant Church v. Seattle*, 120 Wn.2d 203, 220, 840 P.2d 174 (1992).

[23]*Webster's Third New International Dictionary* 1581 (1971).

[24]*See, e.g., Roberts v. Commissioner*, 258 F.2d 634, 639-40 (5th Cir. 1958).

states that the terms of those laws are applicable to housing authorities.

We hold that the provision contained in the Housing Authorities Law at RCW 35.82.070(10) does not exempt the Housing Authority from the statutory duty to contract with fire districts for fire protection and emergency medical services.

The Housing Authority next argues that the contracts required by RCW 52.30.020 must comply with RCW 39.34-.110, which provides that "[n]o power, privilege, or other authority shall be exercised under this chapter where prohibited by the . . . laws of the federal government." The Housing Authority seems to contend that the United States Housing Act of 1937 permits just one contract between a housing authority and any other local political entity.

The United States Housing Act of 1937 provides:

> the Secretary [of Housing and Urban Development] shall not make any contract for loans (other than preliminary loans) or for contributions pursuant to this chapter unless the governing body of the locality involved has entered into an agreement with the public housing agency providing for the local cooperation required by the Secretary pursuant to this chapter.

42 U.S.C. § 1437c(e)(2). And further:

> Every contract for contributions with respect to a low-income housing project shall provide that no contributions by the Secretary shall be made available for such project unless such project . . . is exempt from all real and personal property taxes levied or imposed by the State, city, county, or other political subdivision; and such contract shall require the public housing agency to make payments in lieu of taxes equal to 10 per centum of the sum of the shelter rents charged in such project, or such lesser amount as (i) is prescribed by State law, or (ii) is agreed to by the local governing body in its agreement for local cooperation with the public housing agency required under section 1437c(e)(2) of this title, or (iii) is due to failure of a local public body or bodies other than the public housing agency to perform any obligation under such agreement.

42 U.S.C. § 1437d(d) (part).

The agreements between the Housing Authority and King County providing for payments in lieu of taxes are

agreements such as those referred to in the statutory sections quoted immediately above.

The Housing Authority claims that under the federal law, the Fire Protection Districts may not collect more than their proportionate share of the Housing Authority's payments in lieu of taxes and the Housing Authority has already entered into agreements with King County for those payments. However, neither federal nor state law prohibits a housing authority from contracting with more than one governmental entity. To the contrary, RCW 35.82.210 and RCW 35.82.070 appear to allow a housing authority to agree to make payments to any political subdivision for services furnished by that political subdivision.[25] The only limitation appears to be the *maximum* amount that a housing authority can pay in lieu of taxes and still be eligible for federal funds. This restriction is not applicable to nonfederally funded housing projects and a number of projects operated by the King County Housing Authority are not federally funded.

We perceive no legal impediment to the Housing Authority's obligation to comply with RCW 52.30.020. Accordingly, we hold that the Housing Authority is not exempt from the terms of the fire protection district contracting statute.

---

[25]RCW 35.82.070 provides:

"An authority shall constitute a public body corporate and politic, exercising public and essential governmental functions, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this chapter, including the following powers in addition to others herein granted:

"(1) To sue and be sued; . . . to make and execute contracts and other instruments . . .

". . .

"(4) To arrange or contract for the furnishing by any person or agency, public or private, of services, privileges, works, or facilities for, or in connection with, a housing project or the occupants thereof . . .

". . .

"(11) To agree (notwithstanding the limitation contained in RCW 35.82.210) to make such payments in lieu of taxes as the authority finds consistent with the achievement of the purposes of this chapter."

Issue Two.

Conclusion. The King County Housing Authority, having failed to enter into a contract with the Fire Protection Districts for fire protection and emergency medical services, is liable for payment of benefit charges imposed pursuant to RCW 52.18.

The Fire Protection Districts seek "benefit charges" from the Housing Authority for those years in which the Authority was required to contract with the fire districts but refused. The Housing Authority argues that the "benefit charges" are, in fact, taxes or special assessments and that the Authority is therefore exempt from paying the charges.

RCW 52.18.010 provides:

> A benefit charge imposed *shall be reasonably proportioned to the measurable benefits to property resulting from the services afforded by the district.* It is acceptable to apportion the benefit charge to the values of the properties as found by the county assessor or assessors modified generally in the proportion that fire insurance rates are reduced or entitled to be reduced as the result of providing the services. Any other method that reasonably apportions the benefit charges to the actual benefits resulting from the degree of protection, which may include but is not limited to the distance from regularly maintained fire protection equipment, the level of fire prevention services provided to the properties, or the need of the properties for specialized services, may be specified in the resolution and shall be subject to contest on the ground of unreasonable or capricious action or action in excess of the measurable benefits to the property resulting from services afforded by the district. The board of fire commissioners may determine that certain properties or types or classes of properties are not receiving measurable benefits based on criteria they establish by resolution. A benefit charge authorized by this chapter shall not be applicable to the personal property or improvements to real property of any individual, corporation, partnership, firm, organization, or association maintaining a fire department and whose fire protection and training system has been accepted by a fire insurance underwriter maintaining a fire protection engineering and inspection service authorized by the state insurance commissioner to do business in this state, but such property may be protected by the fire protection district under a contractual agreement.

(Italics ours.)

RCW 52.18.020 provides that all property which is exempt from ad valorem taxation under RCW Title 84 and "all property under contract or for which the district is receiving payment for as authorized by RCW 52.30.020 . . . shall be exempt from the benefit charge imposed under this chapter".

RCW 52.18 was amended in 1990 to clarify certain provisions of the law.[26] The Final Legislative Report explains that the amendment was necessary because some agencies had failed to enter into contracts with their fire protection districts and because the original statute did not allow the fire protection districts to make service charges against agency property where no contract existed. The statute was amended so that "[p]roperty of public agencies situated in the fire district is excluded [from benefit charges] only when the agency has contracted for fire protection service or is otherwise making payments to the district."[27]

The Housing Authority did not enter into a contract with the fire districts pursuant to RCW 52.30.020 and thus is liable for the benefit charges — so long as the charges are *not* taxes or special assessments.

The Housing Authorities Law specifically exempts housing authorities from "all taxes and special assessments" of public bodies.[28]

Although the Housing Authority is exempt from taxation, it does have the authority to pay for services rendered to it.[29]

Further, the Housing Cooperation Law (RCW 35.83) provides:

For the purpose of aiding and cooperating in the planning, undertaking, construction or operation of housing projects located within the area in which it is authorized to act, any state public body may upon such terms, with or without consideration, as it may determine:

[26]Laws of 1990, ch. 294, p. 1645.

[27]*1990 Final Legislative Report* (51st Legislature), SSB 6182, at 134.

[28]RCW 35.82.210.

[29]RCW 35.82.070(4).

. . .

(5) Cause services to be furnished to the housing authority of the character which such state public body is otherwise empowered to furnish[.]

RCW 35.83.030(5).

Thus, although a housing authority is exempt from taxes and assessments, it is not immune from paying for services or benefits received.

 The question here then becomes whether the benefit charges are taxes, special assessments, or fees for a service or benefit received. In this regard, it is the nature of the charge, rather than its name, that determines whether or not it is a tax.[30]

Taxes are defined by statute and case law. RCW 84.04.100 provides:

The word "tax" and its derivatives, "taxes," "taxing," "taxed," "taxation" and so forth shall be held and construed to mean the imposing of burdens upon property in proportion to the value thereof, for the purpose of raising revenue for public purposes.

 Judicial decisions determining whether a governmental entity has authority to levy a particular charge have defined taxes as " 'burdens or charges imposed by legislative authority on persons or property, to raise money for public purposes, or, more briefly, "an imposition for the supply of the public treasury." ' "[31] If charges are primarily intended to raise money, they are taxes. If the charges are primarily tools of regulation, they are not taxes.[32] Where the charge is related to a direct benefit or service, it is generally not considered a tax or assessment.[33]

---

[30]*See, e.g., Margola Assocs. v. Seattle*, 121 Wn.2d 625, 635, 854 P.2d 23 (1993) (quoting *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 809, 650 P.2d 193 (1982)).

[31]*Spokane v. Spokane Police Guild*, 87 Wn.2d 457, 461, 553 P.2d 1316 (1976) (quoting *State ex rel. Nettleton v. Case*, 39 Wash. 177, 182, 81 P. 554 (1905)).

[32]*Hillis Homes, Inc. v. PUD 1*, 105 Wn.2d 288, 299, 714 P.2d 1163 (1986).

[33]*See, e.g., Jersey City Sewerage Auth. v. Housing Auth.*, 70 N.J. Super. 576, 580, 176 A.2d 44 (1961) (charge for the treatment of sewerage to eliminate pollution is

■■■ The benefit charges allowed under the fire district statute, unlike property taxes, are not uniformly based on the value of property and are not based at all on the value of land. Instead, the charges are to be "reasonably proportioned to the measurable benefits to property resulting from the services afforded by the district." RCW 52.18.010.

Where fire protection services are not needed by a person or entity which maintains its own acceptable fire protection services, benefit charges are not authorized. The charges may be based on fire insurance rates, distance to fire equipment, the level of services provided to the property, or the need of the property for specialized services. The charges may be individually determined and the amount charged can be challenged by individual property owners.[34]

Benefit charges under the fire district statute are akin to charges for services rendered and we hold that they are not taxes.

The Housing Authority argues that if a benefit charge is not a tax, then it is a "special assessment" from which the Authority is exempt under RCW 35.82.210. Special assessments

> are for the construction of local improvements . . . appurtenant to specific land and bring a benefit substantially more intense than is yielded to the rest of the [city]. The benefit to the land must be actual, physical and material and not merely speculative or conjectural.

*Teter v. Clark Cy.*, 104 Wn.2d 227, 230, 704 P.2d 1171 (1985) (quoting *Heavens v. King Cy. Rural Library Dist.*, 66 Wn.2d 558, 563, 404 P.2d 453 (1965)).

---

not in the nature of a tax or special assessment as it is not imposed by the local governing body for the purpose of general revenue, but is a fee imposed by an independent corporate agency for the purpose of paying its own private debts), *affd*, 40 N.J. 145, 190 A.2d 870 (1963); *Housing Auth. v. Blytheville*, 228 Ark. 736, 739, 310 S.W.2d 222 (1958) (sewer service charge was not a tax or assessment but a fee for services); *Murray City v. Board of Educ. of Murray City Sch. Dist.*, 16 Utah 2d 115, 119 n.4, 396 P.2d 628 (1964) (noting that other authorities, too, generally regard a charge by a sewage authority as a use or service charge rather than an assessment or tax).

[34]RCW 52.18.010.

The benefit charges involved here do not fit within the definition of special assessment. The benefit charges are not made for the construction of local improvements.

The benefit charges levied by the Fire Protection Districts pursuant to RCW 52.18 are not taxes or assessments, but rather are fees for benefits received. Because it did not contract with the Fire Protection Districts pursuant to RCW 52.30.020, the Housing Authority is required to pay benefit charges levied by the Fire Protection Districts.

Reversed and remanded for entry of an order requiring the King County Housing Authority to contract with the Appellant Fire Protection Districts, pursuant to RCW 53.30.020, and for a determination of the amount, consistent with federal and state law, of benefit charges owed to the Fire Protection Districts.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

Reconsideration denied June 28, 1994.