55 P.3d 1170 (2002)
ARBORWOOD IDAHO, LLC, a foreign limited liability company, Appellant,
v.
CITY OF KENNEWICK, a municipal corporation of the State of Washington, Respondent.
No. 20523-1-III.
Court of Appeals of Washington, Division 3, Panel Six.
September 10, 2002.
Publication Ordered October 15, 2002.
*1171 Daryl D. Jonson, Terri L. Tomich-Salinas, Cowan, Walker, Jonson & Moore, Richland, WA, for Appellant.
John S. Ziobro, City Attorney, Kennewick, WA, for Respondent.
KURTZ, J.
The City of Kennewick assesses a monthly charge on each household, business, and industry served by emergency and medical services. Kennewick Municipal Code (KMC) 9.36.050. At the time relevant to this appeal, the ambulance charge was referred to as an "excise tax," and both owners and occupants were "jointly responsible for this excise tax." Former KMC 9.36.050(a) (1989).[1] Arborwood Idaho, LLC, ("Arborwood"), the owner of an apartment complex in Kennewick, challenged the validity of this assessment. After Arborwood's challenge was denied by the Kennewick Appeals Commission, Arborwood appealed to the superior court, which granted summary judgment in favor of Kennewick. On appeal, Arborwood contends: (1) the ambulance charge is not a valid excise tax because it exceeds the taxing authority granted by RCW 35.21.768; and (2) the ambulance charge is an unconstitutional tax *1172 upon the ownership of property in violation of article VII, sections 1 and 5 of the Washington Constitution. We conclude the ambulance charge is not a tax and, therefore, RCW 35.21.768 does not apply. We further conclude the Kennewick ambulance charge is a valid regulatory fee and, for that reason, affirm the judgment of the superior court.

FACTS
Kennewick has established an emergency medical and ambulance service for the use, health, and welfare of city residents. KMC 9.36.010. To cover the cost of providing this service, a monthly charge is levied and collected on "all households, businesses and industries served by emergency medical and ambulance services." KMC 9.36.050. At the time relevant to this appeal, the ambulance charge was described as an "excise tax." Former KMC 9.36.050. Moreover, former KMC 9.36.050(a) provided:
That each industry, business and household shall be assessed the emergency medical and ambulance service charge monthly and billed not less than bi-monthly, as an excise tax. The owner and the occupant of industries, businesses and households are jointly responsible for this excise tax. Taxes will be billed only to that person whose name appears on the utility account.
Clerk's Papers (CP) at 41.
The version of KMC 9.36.050 at issue here refers to the ambulance charge as an "excise tax." This provision has been amended to change the words "excise tax" to "utility charge." The nature of a tax is determined by its incidents, not its name. Harbour Village Apartments v. City of Mukilteo, 139 Wash.2d 604, 607, 989 P.2d 542 (1999) (citing Jensen v. Henneford, 185 Wash. 209, 217, 53 P.2d 607 (1936)).
Pursuant to KMC 9.36.050, Kennewick imposes a monthly ambulance charge on each occupied apartment and collects the tax from the owner if the units are not separately metered for utility services. If an owner refuses to pay, Kennewick can discontinue all utility service to the apartments under KMC 9.36.050(3). All revenue generated from the ambulance tax and service fee is used for the operation, maintenance, and capital needs of the emergency medical and ambulance service. The fund is also used to pay the cost of providing ambulance service to Kennewick residents who are underinsured or uninsured. Kennewick collected $733,000 from the ambulance tax in the year 2000; the cost of providing ambulance service was $1.4 million.
Arborwood purchased an apartment complex in Kennewick in September 1992. The apartment complex consists of 33 buildings containing a total of 188 apartment units. The apartments receive water and sewer utility service from Kennewick. These utilities are billed to Arborwood through four separate accounts. Electricity is not provided by Kennewick, but is provided and billed through the Benton County Public Utilities District ("PUD").
Since 1989, the occupancy for multi-unit accounts served by one water meter has been determined on a monthly basis by cross-referencing Kennewick's water/sewer utility records with PUD's records for electrical service. Because the PUD has individual electric meters or accounts for each unit, vacant or inactive accounts with the PUD are subtracted from the total number of units on the water utility account. This method permits the ambulance charge to be billed based on occupancy.
Arborwood does not have individual meters. As a result, Arborwood was billed for the ambulance charge based on occupancy as determined under this cross-reference system. All businesses and residences within Kennewick were assessed a monthly charge of $2.60 for each industry, business, and residential unit within the city limits. Hence, Arborwood was billed $2.60 a month for each occupied apartment in the complex.
Arborwood challenged Kennewick's collection of the ambulance charge from the apartment owners rather than directly from the tenants. This matter was referred to Kennewick's Support Services Director who rejected Arborwood's claims. Arborwood filed an appeal to the Kennewick Appeals Commission. The appeals commission concluded that the ambulance tax had been appropriately assessed under chapter 9.36 KMC. Arborwood *1173 then filed a notice of appeal, a petition for a writ of review, and complaint for declaratory judgment. The parties filed cross-motions for summary judgment.
The superior court granted summary judgment in favor of Kennewick. In its lengthy memorandum opinion, the trial court did not directly discuss the applicability of RCW 35.21.766 and .768. Instead, the trial court determined that the question to be decided was whether the ambulance charge was a regulatory fee or a tax. The trial court concluded that Kennewick's ambulance charge was a valid regulatory fee and did not address the validity of the ambulance charge under RCW 35.21.768. Arborwood appeals.

ANALYSIS
STANDARD OF REVIEW. When reviewing an order granting summary judgment, this court engages in the same inquiry as the trial court, considering all facts and reasonable inferences in the light most favorable to the nonmoving party. Kahn v. Salerno, 90 Wash.App. 110, 117, 951 P.2d 321 (1998). Summary judgment is appropriate only when no questions of material fact exist. CR 56(c).
The interpretation of a statute or municipal ordinance is a question of law for the court. Ball v. Smith, 87 Wash.2d 717, 722, 556 P.2d 936 (1976). A statute is presumed constitutional and the party attacking the statute bears the burden of establishing its unconstitutionality beyond a reasonable doubt. Leonard v. City of Spokane, 127 Wash.2d 194, 197-98, 897 P.2d 358 (1995) (citing Dep't of Ecology v. State Fin. Comm., 116 Wash.2d 246, 253, 804 P.2d 1241 (1991)). Municipal ordinances are afforded the same presumption of constitutionality. Brown v. City of Yakima, 116 Wash.2d 556, 559, 807 P.2d 353 (1991). Whenever possible, an enactment must be interpreted in a manner which upholds its constitutionality. City of Tacoma v. Luvene, 118 Wash.2d 826, 841, 827 P.2d 1374 (1992).
STATUTORY AUTHORIZATION. A taxing statute must be construed as a whole to ascertain the intent of the Legislature. Group Health Coop. v. Dep't of Revenue, 106 Wash.2d 391, 401, 722 P.2d 787 (1986). The words of the statute, unless otherwise defined, should be given their ordinary meaning. Id. "If a tax statute is ambiguous the statute must be construed most strongly against the taxing authority." Id.
RCW 35.21.766 provides as follows:
Whenever the legislative authority of any city or town determines that the city or town or a substantial portion of the city or town is not adequately served by existing private ambulance service, the legislative authority may by appropriate legislation provide for the establishment of a system of ambulance service to be operated as a public utility of the city or town or operated by contract after a call for bids.
RCW 35.21.768 authorizes municipalities to impose an excise or additional tax to operate and maintain these ambulance services. However, there is no requirement that a municipality must fund its ambulance service through the use of an excise tax. RCW 35.21.768 reads, in part, as follows:
The legislative authority of any city or town is authorized to adopt ordinances for the levy and collection of excise taxes and/or for the imposition of an additional tax for the act or privilege of engaging in the ambulance business. Such business and occupation tax shall be imposed in such amounts as fixed and determined by the legislative authority.
The excise taxes other than the business and occupation tax authorized by this section shall be levied and collected from all persons, businesses, and industries who are served and billed for said ambulance service owned and operated or contracted for by the city or town in such amounts as shall be fixed and determined by the legislative authority of the city or town.
In short, RCW 35.21.766 and .768 authorize municipalities to operate ambulance services and, if need be, to fund these services by imposing and collecting an excise tax on "all persons, businesses, and industries who are served and billed" for ambulance services. RCW 35.21.768 (emphasis added). While these provisions contain fairly expansive language, RCW 35.21.768 may place a limitation on the manner in which this tax is *1174 imposed and collected. In effect, the tax must be "levied and collected" from "all" entities "served and billed." However, the use of the word "all" seems to suggest a very broad reading of the word "served."
Arborwood suggests that the ambulance charge is not authorized by RCW 35.21.768 for several reasons. First, Arborwood contends that the ambulance tax is not an excise tax. Second, Arborwood asserts the ambulance charge is an unconstitutional property tax. And finally, Arborwood asserts that an apartment owner cannot be "served" by an ambulance service for purposes of RCW 35.21.768.
Is the ambulance charge an excise tax?
RCW 35.21.768 authorizes the imposition of an excise tax on "all persons, businesses, and industries who are served and billed" for ambulance services. (Emphasis added.) KMC 9.36.050 mirrors this provision by stating generally that the ambulance tax "shall be levied and collected from all households, businesses and industries served" by ambulance services. But, when detailing how the ambulance charge will be assessed, former KMC 9.36.050(a) provides that "each industry, business and household shall be assessed the emergency medical and ambulance service charge monthly and billed not less than bi-monthly, as an excise tax." CP at 41 (emphasis added).
"`The obligation to pay an excise tax is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege or engaging in the occupation which is the subject of the excise, and the element of absolute or unavoidable demand, as in the case of a property tax, is lacking.'" High Tide Seafoods v. State, 106 Wash.2d 695, 699, 725 P.2d 411 (1986) (quoting Black v. State, 67 Wash.2d 97, 99, 406 P.2d 761 (1965)).
RCW 35.21.768 authorizes Kennewick to impose the ambulance tax on "all" entities and "persons" served by the ambulance service. Former KMC 9.36.050(a) is more restrictive. Under former KMC 9.36.050(a), the ambulance charge is assessed on "each" entity and "household" based on occupancy. The use of the word "each" and "household" implies that the ambulance charge is being imposed on each occupied apartment rather than the apartment owner. Under this reading of the ordinance, the ambulance charge is not assessed on owners, but merely collected from the owner who fulfills a role as part of the fee collection mechanism. In other words, while the owner and occupant are jointly responsible for the payment of this assessment, there is no explanation as to what constitutes the taxing event or how this relates to nonresident owners. As a result, there is a question as to whether Kennewick chose to finance its ambulance services through the vehicle of an RCW 35.21.768 excise tax or a regulatory fee.
In short, former KMC 9.36.050(a) assesses the ambulance charge against each potential user of the ambulance services and does not clearly explain the basis for the imposition of an excise tax on nonresident apartment owners. Hence, even though RCW 35.21.768 permits a municipality to impose an ambulance excise taxand RCW 35.21.768 may permit this tax to be assessed against an apartment ownerKennewick did not draft an ordinance that takes advantage of RCW 35.21.768.
Is the ambulance charge an unconstitutional property tax?
Arborwood asserts that the Kennewick ambulance charge exceeds the taxing authority granted by RCW 35.21.768 because the ambulance charge imposes an unavoidable ambulance tax on the owner of real property regardless of whether that person, industry or business is "served" by the ambulance service. Arborwood contends the ambulance charge is a property tax that is unconstitutional under Washington Constitution article VII, sections 1 and 5 because the ambulance charge is not based upon the value of the property and is not uniform upon the same class of property within a taxing district. Kennewick concedes that the ambulance charge is unconstitutional if the court finds that the charge is a property tax.
A property tax is defined as an "`absolute and unavoidable demand'" against property and the ownership of property. Covell v. City of Seattle, 127 Wash.2d 874, 889, *1175 905 P.2d 324 (1995) (quoting High Tide Seafoods, 106 Wash.2d at 699, 725 P.2d 411). The Kennewick ambulance charge is not an absolute or unavoidable tax because mere ownership of the property is not the basis for the tax. Assuming an excise tax is imposed, this tax is based on the occupancy of the rental units rather than the ownership of those units. No ambulance charge is assessed on units that are empty. Hence, the ambulance charge is not a matter of absolute demand and is not an unconstitutional property tax.
The case relied upon by Arborwood, Harbour Village Apartments v. City of Mukilteo, 139 Wash.2d 604, 989 P.2d 542 (1999), is distinguishable. In Harbour Village, the City of Mukilteo imposed a residential dwelling fee that included a base license fee and a residential dwelling unit (RDU) fee of $80.60 per each dwelling unit rented, leased, or offered for rent or lease. Id. at 605, 989 P.2d 542. Noting that each unit was taxed regardless of whether it was rented, the court concluded that the RDU fee was a property tax because the incident of the tax was measured by the mere ownership of rental property rather than any other factor normally associated with an ongoing business activity. In contrast to the RDU assessment in Harbour Village, the ambulance charge here cannot be characterized as a property tax because it is based on occupancy, not mere ownership.
In short, we conclude the ambulance charge is not an unconstitutional property tax and is not an excise tax authorized by RCW 35.21.768.
Is the ambulance charge on apartment owners a valid regulatory fee?
Local governments may tax pursuant only to specific legislative or constitutional authority. Covell, 127 Wash.2d at 879, 905 P.2d 324. However, local governments have the authority to impose regulatory fees under their extensive general police powers. CONST. art. XI, § 11; Margola Assocs. v. City of Seattle, 121 Wash.2d 625, 634-35, 854 P.2d 23 (1993). Because regulatory fees are not considered to be taxes, regulatory fees are exempt from the constitutional restraints on governmental taxation authority. Samis Land Co. v. City of Soap Lake, 143 Wash.2d 798, 805, 23 P.3d 477 (2001). To determine whether a particular charge is a regulatory fee or a tax, courts must look beyond the official designation and focus on its purpose, design, and function. Id. at 806, 23 P.3d 477.
Whether a charge imposed by a government is a tax or a regulatory fee depends on three factors. Covell, 127 Wash.2d at 879, 905 P.2d 324. First, the court must consider whether the primary purpose of the local government is to accomplish desired public health benefits that cost money or if the purpose is to regulate. Id. If the primary purpose is to raise revenue, the charge is a tax. If the primary purpose is regulatory, the charge is a fee. Id. Second, the court must consider whether the money collected is allocated only for authorized regulatory purposes. Id. Third, the court must determine whether there is a direct relationship between the fee charged and (1) the service received by those paying the fee, or (2) the burden produced by the fee payer. Id.
FIRST COVELL FACTOR. Analysis of the first Covell factor requires a review of the primary purpose behind the enactment of the Kennewick provision imposing the ambulance charge. Arborwood maintains the ambulance charge does not meet the first factor of Covell because the Kennewick ordinance is devoid of any regulatory scheme. Arborwood contends the ambulance charge is an invalid tax because the primary purpose of the ambulance charge is not to regulate, but to raise money.
In effect, Arborwood contends that the Kennewick ordinance imposes an invalid tax because the ordinance is not accompanied by a complicated regulatory scheme. But this is not the test we must apply when evaluating the purpose behind the enactment of KMC 9.36.050. "If the fundamental legislative impetus was to `regulate' the fee payers-by providing them with a targeted service or alleviating a burden to which they contribute-that would suggest that the charge was an incidental `tool of regulation' rather than a tax in disguise." Samis, 143 Wash.2d at 807, 23 P.3d 477 (footnote omitted).
*1176 RCW 35.21.766 and KMC 9.36.010 provide insight as to the purpose behind the enactment of the Kennewick provision imposing the ambulance charge. KMC 9.36.010 establishes an emergency medical and ambulance service "for the use and for the health and welfare of the residents of the City of Kennewick to be operated as a public utility of the City of Kennewick." We agree with the trial court that "it is self-evident that a 24 hour emergency ambulance service has a substantial relation to the general welfare of the people and is, therefore, a valid exercise of the City's police powers." CP at 11-12.
Arborwood points out that much of chapter 9.36 of the Kennewick Municipal Code is devoted to the collection of the ambulance charge and not to regulation. To support this argument, Arborwood relies on Samis. In Samis, a property owner challenged the validity of a "standby charge" imposed on vacant, unimproved lots that were adjacent, but not connected to water and sewer lines. Samis, 143 Wash.2d at 801, 23 P.3d 477. Samis is distinguishable because counsel for Soap Lake conceded that the overall regulatory design did not include any reference to any utility service or burden applicable to the properties charged with the standby charge. Id. at 809, 23 P.3d 477. Accordingly, the court concluded that it was "manifest that the City's primary legislative motivation here was to generate additional revenues to finance broad-based public improvements, not to `regulate' those entities paying the standby charge." Id. Unlike the utility charge challenged in Samis, the ambulance charge here does not finance broad-based public improvements.
In general, a charge is not considered a tax or assessment if the charge relates to a direct benefit or service. King County Fire Prot. Dist. No. 16 v. Housing Authority, 123 Wash.2d 819, 833, 872 P.2d 516 (1994). In King County Fire Protection District, the Housing Authority asserted that its statutory exemption from all taxes levied by the state or local authorities extended to the benefit charges assessed by the Fire District. Id. at 822, 872 P.2d 516. The court determined that the benefit charges, unlike taxes, were not uniformly based on the value of property or land. Id. at 834, 872 P.2d 516. The court concluded that these charges were "akin to charges for services rendered" and were not taxes. Id.
The ambulance charge here meets the first Covell test because the charge does not raise money for broad-based public improvements, but instead regulates the fee payers by providing them with a targeted service, a 24 hour emergency service. Simply stated, the ambulance charge is assessed in exchange for a targeted service that alleviates the burden placed on the system by apartment residents.
SECOND COVELL FACTOR. The second Covell factor requires the money collected to be segregated and allocated exclusively to regulating the entity or activity being assessed. There is uncontroverted evidence supporting this factor. All revenue generated from the ambulance tax and service fee is used for the operation, maintenance, and capital needs of the emergency medical and ambulance service. Moreover, the amount of revenue generated from this ambulance tax was approximately $733,000 in 2000, less than the $1.4 million cost to provide ambulance service.
Arborwood acknowledges that a fee that is assessed against users specificallyas opposed to all persons in the taxing districtis a regulatory fee. However, Arborwood contends that the ambulance charge fails to meet this factor because the ambulance tax is assessed not merely against users, but also against all households, businesses, and industries in Kennewick. In making this argument, Arborwood ignores the unique nature of an ambulance service. To be effective, the ambulance service in Kennewick must be maintained to respond to the needs of city residents whether or not each resident ultimately becomes a "user" of the service. Under KMC 9.36.050, Kennewick establishes an emergency medical fund and the proceeds derived from the fees and services are used exclusively for the operation, maintenance, and capital needs of the emergency medical and ambulance service.
The ambulance charge complies with the second Covell factor.
THIRD COVELL FACTOR. The third Covell factor is satisfied when a relationship exists *1177 (1) between the fee charged and the benefit to the fee payer, or (2) between the fee charged and the burden produced by the fee payer. Covell v. City of Seattle, 127 Wash.2d 874, 879, 905 P.2d 324 (1995).
Arborwood suggests that the ambulance charge is imposed on the owner of property whether or not the owner is served by the ambulance service. Arborwood contends it receives no benefit from the payment of the ambulance charge because the Arborwood corporate offices are located in Sun Valley, Idaho. In short, Arborwood asserts there is no relationship between the ownership of the apartment building and the use of the ambulance service.
Once again, Arborwood is mistaken in its attempt to describe the ambulance charge in terms of ownership as opposed to occupancy. The ambulance charge is assessed based on occupancy. The third Covell factor is met because of the direct relationship between the ambulance fee charged and the burden produced by each occupied unit in the Arborwood complex. Between January 1, 1999, and June 20, 2001, 27 ambulance service calls were made to Arborwood's apartment complex in Kennewick. In Teter v. Clark County, 104 Wash.2d 227, 237-39, 704 P.2d 1171 (1985), charges collected from land shown to be contributing to an increase in surface water runoff were determined to be tools of regulation even though no service was being provided to every fee payer given that the rate schedule bore a reasonable relation to the contribution of each lot to the burden alleviated by the storm and surface water facilities.
We conclude the Kennewick ambulance charge satisfies all of the Covell factors and is a valid regulatory fee. Accordingly, we affirm the judgment of the superior court.
SWEENEY, J. and SCHULTHEIS, J., concur.
NOTES
[1] Now KMC 9.36.050(1).