WALLER, Chief Justice,
for the Court:
¶ 1. A group of property owners filed suit against the Diamondhead Fire Protection District (DFPD) board of commissioners and several current and former DFPD officers, seeking declaratory judgment that a fee charged for fire-protection services is an impermissible tax. Finding the DFPD had authority to charge fees for services rendered, the trial court entered a judgment in favor of the DFPD. The property owners appeal, raising two issues: (1) whether the monthly fee is an illegal tax, and (2) whether the power to tax should be construed narrowly. We find that the trial court correctly decided that the DFPD provides a service to the community, and therefore, the challenged fees for such services are lawful. Therefore, we affirm the trial court’s judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. In 1974, the Hancock County Board of Supervisors adopted a resolution creat *55 ing the DFPD. When it initially was formed, the DFPD was funded through ad valorem taxes and contributions from the Diamondhead Property Owners Association (POA). However, in 1993, the POA stopped contributing to the DFPD. Since 1993, the DFPD has charged local property owners a monthly fee for fire-protection services. From 1993 to 2002, the monthly charge for individuals was $15; however, in 2002, the price increased to $20 per month.
¶ 3. Since 1974, the DFPD has grown tremendously. The DFPD now has two fire departments and fifteen full-time employees. At all times, the DFPD has four experienced firefighters on duty, including a captain and lieutenant. Half of the staff members are nationally registered emergency medical technicians. With full-time employees, the DFPD is responsible for payroll taxes, workers’ compensation, supplies, equipment, repairing and maintaining equipment, providing uniforms, training, oil and gas costs, administrative costs, and so on. According to Fire Chief Jerry Dubuisson, the DFPD responds to more than 700 calls for emergency assistance a year. The DFPD also conducts post-fire investigations, commercial fire and life safety inspections, pre-incident plans, fire-hydrant inspections, and public fire-and-life safety education training.
¶ 4. On March 3, 2009, several property owners sued the DFPD and several current and former members of the DFPD board of commissioners (collectively referred to as the DFPD). While conceding the DFPD could charge fees for services rendered, the property owners argued that they were not receiving a service from the DFPD and, thus, the fee was an impermissible tax. The property owners alleged claims of negligence and extortion against the DFPD. The property owners also filed a motion for declaratory judgment, requesting the trial court to determine the meaning of “services rendered” under Mississippi Code Section 19-5-177(e) and declare whether the DFPD should be enjoined from collecting its fire-protection fee. The DFPD filed a response, urging that it had authority to charge the fee for services rendered. The DFPD also filed three affidavits to support its position from Fire Chief Jerry Dubuisson, Ty Windham of the Mississippi State Rating Bureau, and State Farm Agent Teri Eaton.
¶ 5. Dubuisson stated that, without the fees, the DFPD would have to decrease staffing to two, full-time firefighters per shift and decrease salaries; it could not operate twenty-four hours a day; and it possibly would close one of the fire stations. Regardless of funding, Dubuisson opined that the DFPD would still respond to more than 700 emergency calls per year. Dubuisson stated that a reduced staff would result in response delay times, and reduced pay would result in a less experienced staff. Windham, superintendent of public protection with the Mississippi Rating Bureau, stated that the DFPD’s current fire rating is Class Six. If the DFPD reduced its staff, Windham stated the rating would fall to Class Ten, the lowest rating available. Eaton, a State Farm insurance agent, stated “[i]n the event the Diamondhead community[’s] fire rating were to decrease from a six to a ten, the homeowner insurance premium on a $245,000 residence in the Diamondhead community would increase by approximately $4,409 per year.”
¶ 6. The trial court determined that the DFPD had authority to assess fees for “services rendered” and did not find any restrictive language regarding the term. The trial court stated “a fire department provides services in a variety of ways other than simply putting out a fire or filling a fire extinguisher, services for which plain *56 tiffs maintain property owners could be charged.” Accordingly, the trial court determined the DFPD’s charge for fire-protection services was a fee, not a tax, and thus permissible.
¶ 7. The property owners filed a motion to reconsider, which the trial court denied. Aggrieved, the property owners filed an appeal with this Court.
DISCUSSION
¶ 8. “This Court employs a de novo standard of review when reviewing questions of law, including motions for declaratory judgment.” Tunica County v. Hampton Co. Nat’l Sur., LLC, 27 So.3d 1128, 1131 (Miss.2009).
¶ 9. The issue before this Court is whether the DFPD’s fee for fire-protection services is based on services rendered or whether the charge amounts to an illegal tax.[1]
¶ 10. Mississippi Code Section 19-5-151 provides for the incorporation of water, sewer, garbage and waste collection and disposal, and fire protection districts in unincorporated areas of the state. The Legislature has given such districts explicit authority to assess fees for services rendered as a funding mechanism. See Miss. Code Ann. § 19-5-177(l)(e) (Rev.2012). However, the meaning of “services rendered” is an issue of first impression.
¶ 11. The property owners argue that they receive a service from the fire department only if the department responds to an emergency call and that the assessed fees are really for “anticipatory services.” However, the DFPD asserts that many day-to-day actions are required for it to have the ability to put out fires. To conduct its fire-protection service, the DFPD is required to maintain and repair equipment; to have certified and experienced firefighters available on a daily basis; to provide nationally registered emergency medical technicians; to maintain pre-incident plans, to inspect fire hydrants, and to conduct public fire-and-life safety education training to and for the Diamond-head community. The property owners also have received the benefit of a better fire rating from the Mississippi Ratings Bureau, which resulted in significantly lower homeowner/fire insurance premiums. Finally, better fire protection enhances property values and makes the community more attractive to prospective home buyers/residents.
¶ 12. Words contained in statutes are to be interpreted “according to their common and ordinary acceptation and meaning.” Miss.Code Ann. § 1-3-65 (Rev.2005). Black’s Law Dictionary defines “service” as “the act of doing something useful for a person or company for a fee; a person or company whose business is to do useful things for others; an intangible commodity in the form of human effort, such as labor, skill or advice; [or as a verb] to provide service for....” Black’s Law Dictionary 638 (2d pocket ed.2001). Webster’s Third New International Dictionary defines service as “... the performance of work commanded or paid for by another ...: an act done for the benefit or at the command of another ...: action or use that furthers some end or purpose: conduct or performance that assists or benefits someone or something ...: useful labor that does not produce a tangible commodity ...,” or (as a verb) “to perform services for: meet the needs of ...: to provide information or other assistance to.... ” Webster’s Third New Int’l Dictionary 2075 (2002).
*57 ¶ 13. Courts in other jurisdictions have held that similar service fees are permissible. The Supreme Court of Washington held that “benefit charges” levied by fire protection districts were not taxes or assessments, but rather fees for benefits received. King County Fire Prot. Dist. v. Housing Auth. of King County, 123 Wash.2d 819, 872 P.2d 516, 524 (1994). In King County, the fees at issue were “reasonably proportioned to the measurable benefits to property resulting from the services afforded by the district” and were assessed “based on fire insurance rates, distance to fire equipment, the level of services provided to the property, or the need of the property for specialized services,” and, therefore, were distinguishable from property taxes. Id. at 523 (emphasis added). The Court of Appeals of Wisconsin has rejected the assertion that a fee is appropriate only where a service actually is used to fight a fire — or that to be a fee, a charge must be assessed for commodities actually consumed. City of River Falls v. St. Bridget's Catholic Church of River Falls, 182 Wis.2d 436, 513 N.W.2d 673, 675-76 (Wis.Ct.App.1994). That court held that “the substance, and not the form, of the imposition is the test” of a charge’s “true character.” Id. (citing Milwaukee v. Milwaukee & Suburban Transp. Corp., 6 Wis.2d 299, 94 N.W.2d 584, 588 (1959)). The court found that the primary purpose of the charge at issue was to cover the expense of making water available, storing the water and ensuring that water would be delivered as needed to fight fires at utility customers’ properties. Id. at 676. Therefore, the substance of the charge was consistent with a fee, not a tax. Id.
CONCLUSION
¶ 14. We find that the DFPD provides a valuable service by having fire and other emergency services available to respond to an emergency. Therefore, the fee assessed is permissible. The trial court’s judgment is affirmed.
¶ 15. AFFIRMED.
RANDOLPH, P.J., LAMAR AND PIERCE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ. DICKINSON, P.J., AND COLEMAN, J„ NOT PARTICIPATING.

. The property owners have presented two issues: (1) Whether the monthly fee is an illegal tax and (2) whether the power to tax must be narrowly construed. Because the issues are related, they will be discussed together.