70 N.J. Super. 576 (1961)
176 A.2d 44
THE JERSEY CITY SEWERAGE AUTHORITY, A BODY POLITIC AND CORPORATE, PLAINTIFF,
v.
THE HOUSING AUTHORITY OF THE CITY OF JERSEY CITY, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
THE CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 29, 1961.
*577 Mr. Francis X. Fahy, attorney for plaintiff.
*578 Mr. Harry Indursky, attorney for defendant and third-party plaintiff.
Mr. T. James Tumulty, for third-party defendant (Mr. Ezra L. Nolan, attorney).
PINDAR, J.S.C.
In this action the plaintiff, The Jersey City Sewerage Authority, seeks to recover service charges for the treatment of sewage from the defendant, The Housing Authority of Jersey City. The defendant, as third-party plaintiff, has sued the City of Jersey City as third-party defendant for indemnification in the event of recovery by the plaintiff against the defendant third-party plaintiff. The third-party defendant, City of Jersey City, by its pleading designated "cross claim" has merely iterated the claim of the plaintiff against the defendant. Counsel for the third-party defendant stipulated in court that he is not contesting the right of the Sewerage Authority to a recovery, nor is the Sewerage Authority contesting the right of the third-party defendant to bill and audit the account between plaintiff and defendant at a fixed cost to plaintiff of $5,000.
A concise historical reference to the purpose and authority to function treatment of sewage will be helpful. In 1935 a tri-state compact between New York, Connecticut and New Jersey was formed for, among other things, the elimination of pollution of the navigable streams and waters in the areas set forth in the legislation, R.S. 32:18-1 et seq. By ordinance enacted in 1949 Jersey City created the Jersey City Sewerage Authority pursuant to N.J.S.A. 40:14A-1 et seq. In the interim, however, the defendant Housing Authority had been created pursuant to N.J.S.A. 55:14A-1 et seq., and in 1939 and again in 1950 had entered into cooperation agreements between itself and the City of Jersey City which, as supplemented, are still in effect. Both authorities have the status of autonomous bodies.
Sewage on the defendant's housing projects has been treated and disposed of by plaintiff since October 1, 1957. *579 Sewage service charges pursuant to the rate schedule adopted on September 9, 1957 by the plaintiff, and as amended, have been sent to the defendant but have not been paid. Plaintiff has made demand for payment, but the defendant has failed and refused to pay the same. The fairness of the standard by which the service charge and rate is determined is not in dispute.
The Housing Authority in its defense contends: (1) the City of Jersey City has agreed to furnish the services referred to without any charge or imposition upon the Housing Authority, and that since the Sewerage Authority is an agent of said city, it too is bound by this obligation; (2) the Housing Authority is immune from suit and liability with respect to this plaintiff; (3) the Local Housing Authorities Law grants the defendant an exemption from such a charge, N.J.S.A. 55:14A-20; (4) the Sewerage Authorities Law, N.J.S.A. 40:14A-8, in that it may authorize the collection of such service charge from the Housing Authority, is in violation of the Constitution of the United States and the Constitution of the State of New Jersey; it impairs the rights of the Housing Authority to receive such services without charge under the aforementioned cooperation agreements; (5) the rents chargeable by the Housing Authority to its tenants are limited by statute to fixed percentages, and the imposition of the plaintiff to collect its sewage treatment charges as against this defendant would make it impossible for this defendant to comply with the statute in limiting its rent to the aforesaid fixed percentages.
The issue to be initially determined is the liability of the Housing Authority for such a sewage treatment charge. N.J.S.A. 55:14A-20 provides that the property of the Housing Authority "shall be exempt from all taxes and special assessments of the State or any political subdivision thereof * * *." However, this charge for the treatment of sewage to eliminate pollution is not in the nature of a tax or special assessment to be within the meaning of the statute. The Sewerage Authority is "authorized to charge *580 and collect rents, rates, fees or other charges" and such "being in the nature of use or service charges * * * may be based or computed either on the consumption of water * * * or on any other factors determining the type, class and amount of use or service * * *." N.J.S.A. 40:14A-8(a), (b). The rate charged by the Sewerage Authority, and also used as a basis for the claim sought in the complaint, is, in fact, based directly on the amount of water consumed by the Housing Authority.
The Sewerage Authority has full power over the use and disposition of all service charges collected. N.J.S.A. 40:14A-2(3). It does not depend on moneys raised by taxation. Furthermore, this charge is not one imposed by the local governing body for the purpose of general revenue; it is imposed by an independent corporate agency for the purpose of paying its own private debts. It is therefore not a tax but a fee. Hanson v. Griffiths, 204 Misc. 736, 124 N.Y.S.2d 473 (Sup. Ct. 1953). Nor is this charge a special assessment which is a tax or imposition upon property in the immediate vicinity of municipal improvement. The distinction between local taxes and a local assessment is that the latter is made with reference to the special benefit derived therefrom. Cirasella v. Village of South Orange, 57 N.J. Super. 522 (App. Div. 1959).
In State ex rel. Gordon v. Taylor, 149 Ohio St. 427, 79 N.E.2d 127 (Sup. Ct. 1948), the City of Columbus agreed to allow the Ohio State University to use the city sewers on the campus without cost or expense. The plaintiff contended that such grant did not exempt the university from payment of future charges for the operation of the city's sewerage system, including treatment of sewage. In 79 N.E.2d 127, supra, at page 131, the court said:
"This case does not present a situation where the city is endeavoring to tax property belonging to the state of Ohio, since it is well established that charges for sewer services, or so-called rental charges, are neither taxes nor assessments. Opinion of Justices, 93 N.H. 478, 39 A.2d 765; Veail v. L. & J. County Met. Sewer District, 303 Ky. *581 248, 197 S.W.2d 413; Town of Port Orchard v. Kitsap County, 19 Wash.2d 59, 141 P.2d 150."
In view of defendant's liability under N.J.S.A. 40:14A-8, the court now considers the effect thereon of the cooperation agreements between the Housing Authority and the City of Jersey City. The 1939 agreement relates to the United States Housing Authority (U.S.H.A.) Projects No. N.J.-9-1, 2, 3, 4 and 5, whereas the 1950 agreement relates to U.S.H.A. Projects No. N.J.-9-6, 7 and 9. For the purpose of the determination sub judice the applicable provisions are substantially the same and therefore the court quotes from the pertinent part of the 1950 instrument only. Paragraph 5 thereof provides that the city shall
"(a) furnish or cause to be furnished to the Local Authority and the tenants of such Project (i) the public services and facilities which are at the date hereof being furnished without cost or charge to other dwellings and inhabitants in the City, including but not limited to: educational, fire, police and health protection and services; maintenance and repair of public streets, roads, alleys, sidewalks, sewer and water systems; * * * and adequate sewer services for such Project; and (ii) also such additional public services and facilities as may from time to time hereafter be furnished without cost or charge to other dwellings and inhabitants in the City."
The court is cognizant of the fact that the phrase "without cost or charge," as appears above, is not as such contained in the previous agreement, but it is determined that the language of that agreement indicates that such was within the intent of the parties. In addition, it is noted that both agreements provided for a set payment by the Housing Authority to Jersey City for total services provided. Nevertheless, the service of sewage treatment was not being furnished when the parties entered into the agreements, nor has the service ever been furnished without charge to any "other dwellings or inhabitants in the city." Thus, the contracting municipal authorities must *582 be content to perform and to receive performance in accordance with their own agreement. 3 Corbin, Contracts, sec. 541, p. 94.
Obviously, the treatment of sewage was of a character to be considered and a matter for contemplation before the execution of the cooperation agreements, and therefore it was incumbent upon the Housing Authority to expressly provide in the agreements that Jersey City be liable for any charge for such treatment service. The language used is plain and clear, and the surrounding circumstances do not indicate that a different meaning ought to be interpreted. It is therefore concluded in fact and law that the City of Jersey City is not obligated to furnish to the Housing Authority the treatment of sewage service without extra charge. This being so, the question of the constitutionality of N.J.S.A. 40:14A-8, in that it impairs the obligations of the contract between the Housing Authority and Jersey City, is now regarded as moot; the charge for the treatment of sewage service is not included within the terms of such contract, and therefore Jersey City has no contractual obligation to furnish the treatment of sewage service to the Housing Authority.
The Sewerage Authority as an autonomous public body corporate and politic, is an agency and instrumentality of the creating municipality. N.J.S.A. 40:14A-4(b). It has, among other things, power to sue and to be sued, to use and dispose of its service charges, to enter contracts, and to acquire real property in its own name. The governing body of the municipality has no power or control over the certain powers delegated to the Sewerage Authority. In Santoro v. Mayor and Council of the Borough of South Plainfield, 57 N.J. Super. 307 (Law Div. 1959), affirmed 57 N.J. Super. 498 (App. Div. 1959), the court said, at page 314:
"* * * [T]he legislature, by virtue of statutory enactment, has seen fit to give full control of specific acts to the sewerage authority; and implicit in that legislation is the exclusive right of the sewerage *583 authority to deal with the subject matter under review to the exclusion of any other body, public, governmental or otherwise."
Cf. State v. Parking Authority of Trenton, 29 N.J. Super. 335 (App. Div. 1954); Marino v. Zdanowica, 66 N.J. Super. 512 (Law Div. 1961).
Moreover, the Sewerage Authority, not being a subordinate municipal agency, has full power to sue to collect a charge from the owner of any real property for the use of its service. To this extent, at least, the Housing Authority can be sued by it. N.J.S.A. 55:14A-7.
The Housing Authority is obligated to fix its rentals at no higher rates than it shall find to be necessary to produce receipts to meet the cost of maintaining and operating the projects. N.J.S.A. 55:14A-8. The court acknowledges the fact that an increase in expenses will tend to cause an increase in rentals but to impose this additional financial burden upon the other citizens of the community was neither the legislative intent nor the intent of the City of Jersey City in executing the contract with the Housing Authority. At any rate, the defendant has produced no evidence to indicate to what extent in fact, if any, the rents may be severally affected. The court therefore holds the defendant liable for the treatment of sewage charges and the third-party defendant free of any liability.
Since the amount of damages sought by the plaintiff has not been contested, the defendant is obligated to pay the plaintiff the amount of $169,731.43 for the services duly calculable as rendered to December 31, 1959. For services rendered by the Sewerage Authority to the Housing Authority since that date, as well as any future services, the defendant shall pay therefor in accordance with the duly authorized rate schedule in effect at the time the service is rendered.
There remains to be determined the question of interest on the unpaid debt owed by defendant to plaintiff. The amount charged for the services, although unliquidated, *584 is established by mere computation from the published rate schedule, and therefore interest may be awarded, but there is no claim of conventional interest here; and the statute N.J.S.A. 40:14A-1 et seq. makes no provision for the payment of interest, nor is the Sewerage Authority authorized in express terms to exact interest on unpaid charges. Under such facts a court of law is controlled by the circumstances of each case and interest is allowed in accordance with principles of equity in order to accomplish justice. Jardine Estates v. Donna Brook Corp., 42 N.J. Super. 332 (App. Div. 1956).
Adopting the aforementioned principles of law to this case, the denial of the right to recover the sewage treatment service charges from the Housing Authority is considered to have been in good faith. Moreover, the Sewerage Authority, although it made demands for payment, did not commence litigation to enforce its rights for more than one year after such right accrued. Accordingly, interest is not awarded for inclusion in the aforestated obligation of defendant to plaintiff.
There can be no recovery for expenses of litigation, or expenditures for counsel fees, unless there is some express statutory or contractual obligation which is not present in this case. See Textileather Corp. v. American Mut. Liability Ins. Co., 110 N.J.L. 483 (E. & A. 1933). See also, R.R. 4:55-7; State v. Otis Elevator Co., 12 N.J. 1 (1953). However, plaintiff in addition to a recovery for the subject service charges is entitled to costs.
Counsel should present conformable order for judgment.