**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3830
_____

DAVID C. ONYIUKE,
                                        Appellant
v.

CHEAP TICKETS, INC.; VIRGIN ATLANTIC LTD.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 09-cv-00891)
District Judge:  Honorable Katharine S. Hayden
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 1, 2011
Before:  SLOVITER, FISHER and WEIS, <u>Circuit</u> <u>Judges</u>
(Opinion filed July 5, 2011)
_____

OPINION
_____

PER CURIAM.

        Appellant David C. Onyiuke, proceeding pro se, appeals from the orders of

the United States District Court for the District of New Jersey dismissing his complaint

for lack of subject matter jurisdiction and denying his motion for reconsideration.  For the

reasons that follow, we will affirm the orders of the District Court.

## I.

In April 2009, Onyiuke filed an amended complaint against Virgin Atlantic Ltd. ("Virgin Atlantic") and Trip Network, Inc. d/b/a Cheaptickets.com ("Cheaptickets"), alleging breach of contract, breach of the covenant of good faith and fair dealing, and conversion, arising from the cancellation of service between Newark Liberty International Airport and Gatwick Airport in London, England.

In August 2008, Onyiuke purchased plane tickets through the online travel site Cheaptickets.com. Under to the flight arrangement, he was scheduled to fly from Newark to London on December 12, 2008 on a plane owned and operated by Continental Airlines, which undertakes certain flight obligations from Virgin Atlantic. Onyiuke was then scheduled to fly – via Virgin Nigeria Airlines – to Lagos, Nigeria, his final destination. Under the arrangement, Onyiuke would embark on a return flight to New Jersey on January 12, 2009. He paid a total of $1,563.70 for the tickets.

On or about November 7, 2008, Continental Airlines discontinued service between Newark and Gatwick Airport. Cheaptickets notified Onyiuke about this change in service on December 3, 2008 and offered a modified flight arrangement whereby Onyiuke would have to provide his own transportation from Heathrow Airport to Gatwick Airport in order to catch his connecting flight to Nigeria. Alternatively, Cheaptickets offered to refund the full cost of his flight. Onyiuke refused to accept either alternative.

The following day, Onyiuke contacted Cheaptickets customer service and was again offered a refund. After refusing to accept Cheaptickets' refund offer for a third time, Onyiuke booked his flights with a different travel agency for $3,163.29 and initiated suit against Cheaptickets and Virgin Atlantic.

The Defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the District Court lacked subject matter jurisdiction over Onyiuke's claims because the amended complaint failed to satisfy the amount of money in controversy required under 28 U.S.C. § 1332. The Court granted the motions, concluding that the amount in controversy did not meet the minimum jurisdictional amount. Onyiuke filed a motion for reconsideration, which the District Court denied. Onyiuke appeals.

**II.**

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a District Court's determination of its jurisdiction de novo. See Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192, 197 (3d Cir. 2007). To the extent that a District Court makes factual findings in determining jurisdiction, we review for clear error. Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998). We will not disturb the factual findings of the District Court unless we are "left with the definite and firm conviction that a mistake has been committed" in the District Court's fact-finding. Frett-Smith v. Vanterpool, 511 F.3d 396, 399 (3d Cir. 2008) (citation

3

omitted).

Diversity jurisdiction requires that the controversy be between citizens of different states, and that the amount in controversy exceed $75,000. See 28 U.S.C. § 1332(a)(1). Whether diversity jurisdiction exists is determined by examining "the facts as they exist when the complaint is filed." Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989); Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc., 316 F.3d 408, 410 (3d Cir. 2003).

In determining whether the amount in controversy exceeds $75,000, the Court generally accepts the plaintiff's good faith allegations. Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995). However, the case may be dismissed for failure to meet the amount in controversy requirement if it appears to a "legal certainty" that the claim is for less than the jurisdictional amount. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938); Dardovitch v. Haltzman, 190 F.3d 125, 135 (3d Cir. 1999). It necessarily follows that whether the claims are for less than the jurisdictional amount depends on what damages a plaintiff could conceivably recover under state law. Suber v. Chrysler Corp., 104 F.3d 578, 584 (3d Cir. 1997). When punitive damages are recoverable, they are properly considered in determining whether the jurisdictional amount has been satisfied, see Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993), but when a claim for punitive damages is frivolous, "such damages are unavailable as a matter of law" and "that claim must be stricken from the amount in controversy," id.

4

Onyiuke sought identical damages of $127,793.57 from each defendant, a sum composed of nominal, actual, and special contract damages; punitive damages; damages for mental agony; and litigation expenses. Notably, of the $127,793.57 that Onyiuke sought from each Defendant, he allotted more than $87,000 to his conversion claim (with $80,000 representing punitive damages), and more than $40,000 to his breach of contract claim (with $25,000 representing his mental agony damages). After reviewing the record, we conclude that the District Court did not err in determining that the amount in controversy did not satisfy the jurisdictional requirement.

First, assuming that punitive damages are recoverable in New Jersey for the tort claim of conversion, such damages may only be awarded if a plaintiff demonstrates by "clear and convincing evidence, that the harm [he] suffered was the result of the defendant's acts or omissions, and [that] such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." See N.J. Stat. Ann. § 2A:15-5.12(a).[1]

We agree with the District Court that Onyiuke failed to allege facts sufficient to demonstrate that the Defendants acted with the requisite malice or willful disregard to justify his demand for punitive damages arising from the alleged conversion

---

[1] Actual malice is defined as "an intentional wrongdoing in the sense of an evil-minded act." N.J. Stat. Ann. § 2A:15-5.10. Furthermore, wanton and willful disregard is a "deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." Id.

of $1,563.70. As the District Court noted, Onyiuke's claims arise from his dissatisfaction with the changes to his itinerary, the refund policy in place, and the unwillingness of the Defendants to meet his demands. Such allegations do not support a claim for punitive damages as defined under the statute.

We now turn to Onyiuke's request for damages of $25,000 from each Defendant for mental agony arising from the alleged breach of contract. Contrary to Onyiuke's assertion, the District Court applied the correct legal standard to evaluate his claim. The Court correctly observed that, under New Jersey law, a plaintiff may recover for emotional distress damages resulting from a breach of contract where the breach was "both intentional and outrageous and proximately cause[d] severe, foreseeable emotional distress." See Picogna v. Bd. of Educ., 671 A.2d 1035, 1037 (N.J. 1996). The "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Buckley v. Trenton Saving Fund Soc'y, 544 A.2d 857, 863 (N.J. 1988) (quoting Restatement (Second) of Torts, § 46).

We agree that Onyiuke failed to allege intentional conduct on the part of the Defendants so outrageous as to cause emotional distress. Although Onyiuke was undoubtedly inconvenienced by the cancellation of his flight, "complaints [that] amount to nothing more than aggravation, embarrassment, an unspecified number of headaches, and loss of sleep" do not amount to severe emotional distress. Id. at 864. Indeed, Onyiuke ultimately traveled to Nigeria as planned and also declined Defendants' offer to

6

reimburse him for the cost of his alternate travel arrangements.

Without the demands for punitive damages and damages for mental agony, the amount in controversy does not meet the threshold amount for diversity jurisdiction. Thus, we find no error in the District Court's decision to dismiss the amended complaint for lack of jurisdiction. In addition, we discern no abuse of discretion in the District Court's denial of Onyiuke's motion for reconsideration. Onyiuke did not demonstrate any basis for granting the motion, such as intervening change in controlling law, new evidence, or the need to correct clear error of law or fact or prevent manifest injustice. See Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010).

For the foregoing reasons, we will affirm the orders of the District Court.