**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2848-16T1

GARY HAWKINS and MANDI HAWKINS,

    Plaintiffs-Appellants,

v.

BOROUGH OF BARRINGTON, JOHN
DIXEY, SHEILA DIXEY, FIRST
AMERICAN TITLE INSURANCE
COMPANY, FRANKLIN AMERICAN
MORTGAGE COMPANY, and WELLS
FARGO HOME MORTGAGE,

    Defendants,

and

KATHLEEN MCDONALD, and
PRUDENTIAL FOX & ROACH REALTORS,

    Defendants-Respondents.

_____

Submitted February 14, 2018 – Decided August 17, 2018

Before Judges Koblitz and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Docket No. L-
3543-12.

Matthew S. Wolf, LLC, attorneys for appellants
(Matthew S. Wolf, of counsel and on the
brief).

Reger Rizzo & Darnall, attorneys for
respondents (Andrew J. Luca and John M. Cinti,
on the brief).

PER CURIAM

Gary and Mandi Hawkins appeal the February 3, 2017 order granting summary judgment to defendants Prudential Fox & Roach Realtors and Kathleen McDonald (the Prudential defendants) and dismissing their professional negligence claim against these defendants arising from a real estate transaction. Their claims for intentional infliction of emotional distress (IIED) and violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210, were dismissed in 2015, by an order granting summary judgment. We affirmed that order in October 2016. See Hawkins v. Borough of Barrington, No. A-2788-14 (App. Div. Oct. 13, 2016). However, our opinion reversed and remanded plaintiffs' professional negligence claim to the trial court.

On remand, the Prudential defendants filed a new motion for summary judgment limited to the professional negligence claim, which plaintiffs opposed. On February 3, 2017, the trial court granted summary judgment and dismissed the professional negligence claim. Plaintiffs appeal that order, which we now affirm.

I.

We recount the facts of this case from our prior opinion.

On April 24, 2010, plaintiff Mandi Hawkins attended an open house on Erie Avenue in Barrington, for a property that recently had been relisted for sale by owners, John and Sheila Dixey (the sellers). The sellers owned the property for about five years. Defendant Kathleen McDonald (McDonald), the listing agent, worked for defendant realtor, Prudential Fox and Roach (Prudential). Prudential was also the broker when the property was listed in 2009, but an agent other than McDonald had the listing at that time.

On April 29, 2010, plaintiffs signed a contract with the sellers to buy the property for $240,000. McDonald was the real estate agent for the plaintiffs, as buyers, and the sellers, making her a "disclosed dual agent" for the sale. On April 29, 2010, plaintiffs were given a copy of the seller's "Property Condition Disclosure Statement" that had been signed by the sellers in September 2009 when they previously listed the property for sale and by McDonald in March 2010 when she obtained the listing. The sellers' disclosure provided that the property was not in any area "designated as protected wetlands"; was not located in a flood hazard zone; and was not the subject of "drainage or other easements affecting the property." It did disclose that there were "drainage or flood problems affecting the property," with a handwritten addition referencing flooding on the street: "the street on a major storm, but the township is fixing, had to sign a form to okay the work."

On April 27, 2010, just two days before signing the contract of sale, the sellers filed a tax assessment appeal with the County Board of Taxation where they complained about the flooding on Erie Street, that their house is located "in wetlands" and that the "front and back yards are swamps." Photographs

submitted by the sellers depicted these conditions. On June 17, 2010, the Dixeys were granted a $29,700 reduction, bringing the property's assessed value to $240,000.

McDonald was aware of the tax assessment appeal. In an April 28, 2010 e-mail, just one day before plaintiffs signed the contract of sale, McDonald responded to Sheila Dixey's questions about filling out the tax appeal forms, telling her, "[a]nd yes, put down the wetland issue/swamp/railroad tracks . . . and the rundown neighborhood to make it sound good." McDonald also mentioned that the "buyers seem very excited." McDonald thereafter received an e-mail from the Sheila Dixey who wanted "to check with you to make sure the buyers won't eventually have access to all I included in our appeal. I really laid into the neighborhood and wetlands condition and included all sorts of pictures to verify my point. I'd die if that information were to become available." In her deposition, Dixey explained that she was referring to her neighbors finding out she had taken pictures of their "ratty houses and properties."

The sellers previously listed the property for sale in 2009. Although another buyer signed a contract of sale for the property, that contract was rescinded by the buyers "because of the water issues associated with the property." The buyers noted a moldy smell in the house. Also, the November 2009 home inspection performed for those buyers and provided to Prudential and the sellers reported there was water, raw sewage and mold in the property's crawl space. The property was taken off the market and then relisted for sale early in 2010, after the sellers had a waterproofing system professionally installed in the crawl space.

4

> Plaintiffs closed on the property on June 23, 2010. On the very next day, it rained and plaintiffs suffered "massive flooding" of their front and back yards. Flooding happened again on July 13, 2010, and at least six times after that, although according to plaintiffs, the water stopped short of coming into the house.
>
> The Borough's engineer investigated the flooding in response to complaints by plaintiffs. In his August 19, 2010 report, the engineer noted the storm water runoff from the street discharged into an adjacent wooded wetland area and ditch. Flooding resulted from the thirty-three-acre upstream watershed, flatness of the topography, natural drainage patterns and a century of suburban development that created impervious surfaces and surface runoff to the area adjacent to the plaintiffs' home. The Borough updated the discharge point of the existing storm sewer pipe to allow more efficient discharge and help "during normal precipitation."
>
> [Hawkins, slip op. at 2-5.]

Plaintiffs filed suit against a number of defendants,[1] including the Prudential defendants. Their claims against the Prudential defendants included violation of the CFA, IIED and professional negligence. We affirmed dismissal of the consumer fraud claim, agreeing with the trial judge that plaintiffs did not show proof of an ascertainable loss.

> Plaintiffs were not qualified to offer an opinion about the value of the real estate in the absence of expert testimony.

---

[1] Parties other than the Prudential defendants have been dismissed.

> Plaintiffs did not present evidence of the property's fair market value from a qualified real estate appraiser. Plaintiffs' proffered expert on damages was an engineer, not a real estate appraiser.
>
> Plaintiffs did not attempt to place the property on the market or present proof of repair costs.
>
> [Id., slip op. at 11-12 (citations omitted).]

Although plaintiff Gary Hawkins alleged that he suffered emotional distress related to the flooding, we said that his "testimony about his alleged heart palpitations and stress was not quantifiable or measurable because he had no proof of any out-of-pocket losses. Plaintiffs also did not present medical testimony to connect the stress and palpitations to the flooding." Id., slip op. at 13.

Plaintiffs' complaint also alleged the tort of outrage (IIED) against the Prudential defendants. We stated in our 2016 opinion that:

> The tort of intentional infliction of emotional harm requires proof that: 1) defendant acted intentionally or recklessly; 2) the conduct was extreme and outrageous; 3) the actions were the proximate cause of plaintiffs' emotional distress; and 4) the emotional distress was "so severe that no reasonable [person] could be expected to endure it." See Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366 (1988); Model Jury Charge (Civil), § 3.30F.

We find no error in the decision to dismiss this claim because plaintiffs did not show the type of severe emotional distress contemplated by this cause of action. Plaintiffs proffered no medical testimony to connect Gary Hawkins's health issues to the flooding. Those issues started four years after the closing and had other explanations, both work related and personal. Neither plaintiff testified in their depositions to distress "so severe that no reasonable [person] could be expected to endure it." Buckley, 111 N.J. at 366.

[Id., slip op. at 14.]

Our 2016 opinion reversed and remanded the trial court's dismissal of plaintiffs' professional negligence claim because the trial court dismissed that claim without setting forth its reasons. See R. 1:7-4(a). We noted that:

Professional negligence depends on proof that defendants deviated from an applicable standard of care, that the deviation was a substantial factor in causing the plaintiff to be injured and proof of damages. See Model Jury Charge (Civil), § 5.50A; see generally Levine v. Wiss & Co., 97 N.J. 242, 246 (1984). These factors need to be addressed in the first instance by the trial court, in light of the record.

[Id., slip op. at 15.]

Our opinion made no decision about the outcome of the issues on remand, stating:

We make no judgment on the outcome of this issue on remand, and decline to exercise original jurisdiction over it. We do note, however, that there are competing expert reports on the issues of standards and

> deviation from those standards, and there are factual questions about what McDonald and Prudential knew about this property in 2009 and then during the critical period of April to June 2010.
>
> Additionally, because this claim, if it is deemed viable, involves negligence, plaintiffs would be entitled to fair and reasonable compensation for pain and suffering, even if these damages did not amount to an ascertainable loss within the meaning of the CFA.
>
> [Ibid.]

On remand, the Prudential defendants filed a new motion for summary judgment that they described as a "recapitulation of the original motion" from 2014. They alleged that plaintiffs "have not raised any elements of damage that are something that could reach a jury." The remand gave plaintiffs the opportunity "to address whether or not they had any damages within [the] narrow scope of the remand . . . [,][but] they failed to do so."

Plaintiffs opposed the motion. In new certifications that were not included in the earlier summary judgment motions, Mandi Hawkins alleged that they abandoned the house in July 2015 and "are living elsewhere." She claimed that while she lived in the house, she had "extreme anxiety and stress." They would put the furniture and appliances on "blocks to raise them" if the weather was bad. The children could not use the yard because of the flooding. She said they put $20,000 down on the purchase of the

house and paid $50,000 in mortgage payments until they stopped paying it. The flooding put a strain on her family and marriage.

Plaintiff Gary Hawkins also submitted a certification. He alleged the stress from the flooding was so great that he stopped working for two months. He described "overwhelming stress" from the flooding that caused problems at his work. He feared that the water would enter the house. He said he felt he failed his family. His heart would race. He described that he would search the yard for sewer related items after flooding. He felt socially isolated. Since they abandoned the house, he reported that his "stress, anxiety and depression [have] abated to a great degree. I felt much better."

Plaintiffs did not submit any medical or other expert reports relating to their claimed emotional distress damages. They argued they did not require medical testimony to support their claim for emotional distress damages arising from the professional negligence claim.

A different trial judge heard the motion for summary judgment on remand because the prior judge had retired. He concluded that without medical testimony, plaintiffs could not show emotional distress damages. The court rejected plaintiffs' argument that proof of damages in this case should be treated like cases under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49,

where a medical expert is not required to prove emotional distress damages. The court rejected plaintiffs' argument that they suffered from diminution in property value damages since "no one came forward with any proof to say that the value was impaired in any way." Plaintiffs' contention that the land "is not usable" and had to be abandoned, was a "self-declared subjective loss," that could not go to the jury.

On appeal, plaintiffs contend medical testimony is not needed for emotional distress damages in this negligence case citing to our 2016 opinion that referenced fair and reasonable compensation for pain and suffering. They argue that negligence damages are not measured by ascertainable loss, that dismissal of their claim for IIED is not relevant to emotional distress damages, and that the trial court did not take into consideration their down payment and mortgage payments. We do not agree that these arguments have merit.

## II.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged

and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

"Whether it is alleged that the defendant acted intentionally, recklessly or negligently, the Court has said that recovery lies only if the plaintiff can prove emotional distress produced by the defendant's tortious conduct was 'severe' . . . or 'genuine and substantial.'" Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 235 (App. Div. 2014) (citations omitted). "Severe emotional distress means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so . . . ." Id. at 236 (quoting Taylor v. Metzger, 152 N.J. 490, 515 (1998)). This elevated threshold is required because of the potential for fabricated claims. Ibid. (citing Picogna v. Bd. of Educ. of Cherry Hill, 143 N.J. 391 (1996)).

"Complaints such as lack of sleep, aggravation, headaches and depression have been frequently deemed insufficient as a matter of law." Innes, 435 N.J. Super. at 237 (citing DeAngelis v. Hill, 180 N.J. 1, 20-21 (2004)). Emotional distress damages cannot be based on speculation. Id. at 241. A litigant cannot recover emotional distress damages for anxiety that is a consequence of

litigation. <u>Picogna</u>, 143 N.J. at 399 (providing that "litigation-induced distress" is not a separate component of damages).

"The severity of the emotional distress raises both questions of law and fact. Thus, the court decides whether as a matter of law such emotional distress can be found and the jury decides whether it has in fact been proved." <u>Innes</u>, 435 N.J. Super. at 237 (citations omitted).

In <u>Gautam v. De Luca</u>, 215 N.J. Super. 388, 399 (App. Div. 1987), a legal malpractice case, we required proof of "medical evidence establishing substantial bodily injury or severe and demonstrable psychiatric sequelae proximately caused by the tortfeasors misconduct" even in "egregious or extraordinary circumstances".

Our opinion in <u>Innes</u> noted that there are exceptions to the enhanced standard of proof. <u>Innes</u> was a legal malpractice case where the breach of duty owed resulted in the "complete, and potentially, permanent rupture of the parent-child bond." <u>Innes</u>, 435 N.J. Super. at 239. In that case, we said that plaintiffs could recover for "emotional distress damages without enhanced proof based upon the particular, and foreseeable, consequences of defendants' breach of duty." <u>Ibid.</u> <u>Innes</u> cited other cases where enhanced proof was not required. <u>See</u> <u>Baglini v. Lauletta</u>, 338 N.J. Super. 282, 307 (App. Div. 2001) (malicious use of process);

12                                    A-2848-16T1

Geler v. Akawie, 358 N.J. Super. 437, 457 (App. Div. 2003) (wrongful birth arising from inadequate genetic counselling); Menorah Chapels at Millburn v. Needle, 386 N.J. Super. 100, 116 (App. Div. 2006) (funeral home failed to ensure that orthodox ritual requirements were met).

Here, plaintiffs allege professional negligence by the Prudential defendants, who were realtors involved in a real estate transaction. This case did not involve a parent-child relationship, malicious use of process, wrongful birth, funeral services following specific religious tenets, or other non-economic issues where emotional distress damages have been permitted without expert proofs. There was no allegation of bodily injury and no medical reports. The case did not involve a permanent injury, death, or an injury where no other form of redress could be identified. Therefore, we decline to accept plaintiffs' argument that their case could advance without medical evidence of bodily injury or "demonstrable psychiatric sequelae proximately caused by the tortfeasor's misconduct." Those proofs simply are not demonstrated by this record.

Plaintiffs' citation to LAD cases as support for their claim that emotional distress damages do not require heightened proof is not persuasive. In Innes, we said that the LAD's "broad remedial purpose" was the reason why, in Rendine v. Pantzer, 141

N.J. 292, 312-13 (1995), expert medical evidence was not necessary. Legal malpractice claims, however, did not present the "broad, statutorily-created remedy that necessarily relieved plaintiffs of their burden to prove 'severe' or 'genuine and substantial' emotional distress." Innes, 435 N.J. Super. at 238. The professional negligence claim made here against the Prudential defendants similarly did not present any such broad based statutory remedy.

Finally, the remand was limited to plaintiffs' professional negligence claim; it was not an opportunity for plaintiffs to reargue their lack of ascertainable losses.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2848-16T1